**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 08-5007

DARIO MENDOZA-MENDOZA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
W. Earl Britt, Senior District Judge.
(4:08-cr-00032-BR-1)

Argued: January 28, 2010

Decided: March 5, 2010

Before WILKINSON, NIEMEYER, and DAVIS,
Circuit Judges.

Vacated and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer joined. Judge Davis wrote a separate opinion concurring in the judgment.

## COUNSEL

**ARGUED**: Stephen Clayton Gordon, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for

Appellant. Anne Margaret Hayes, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellant. George E. B. Holding, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

## OPINION

WILKINSON, Circuit Judge:

Appellant Dario Mendoza-Mendoza, a citizen of Mexico, pled guilty to one count of illegal entry into the United States following deportation, in violation of 8 U.S.C. § 1326. Mendoza argued that a Guidelines sentence was excessive in light of various facts peculiar to his case. The district court, however, sentenced Mendoza within the Guidelines.

At the very outset of its explanation, the district court stated that while it did not agree with the Guidelines range, it was "obligated" to give Mendoza a Guidelines sentence unless "a reason for a departure from those Guidelines, or a variance based on 18 U.S.C. § 3553" was present. Because prefacing a sentencing explanation with such obligatory terminology amounts to an impermissible presumption that a Guidelines sentence is appropriate, *see Rita v. United States*, 551 U.S. 338, 351 (2007), we believe the prudent course is to remand for re-sentencing. In doing so, however, we do not imply that the district court's Guidelines sentence was substantively unreasonable or that *Rita* remands are warranted in cases where there exists no serious possibility that the district court treated the Guidelines as presumptively binding.

### I.

In 1997, Mendoza, then eighteen years old, illegally entered the United States from Mexico. He settled in Green-

ville, North Carolina, and began working in the construction industry. Mendoza had fathered two children back in Mexico, but in 2004 he became romantically involved with a Greenville woman. They now live together—we accept the government's characterization of the young woman as Mendoza's "common-law wife"—and are the parents of two young children of their own.

Their story is a bit more complicated, however, and not just because Mendoza was present in the United States illegally. At the time they met, the young woman told Mendoza she was nineteen years old. In fact, she was only fourteen, and her mother, upon learning of the relationship, promptly called the police. Mendoza was arrested and convicted in North Carolina court in July 2004 on two counts of taking indecent liberties with a child. *See* N.C. Gen. Stat. § 14-202.1. He was given a suspended sentence of fifteen to eighteen months, plus eighteen months' probation. Several weeks later, he was deported.

This was hardly the end of Mendoza's stay in the United States, however. Within days of being deported, he was arrested in Texas by U.S. border officials. He pled guilty to misdemeanor illegal entry, received a four-day custodial sentence, and was immediately re-deported. Later that year, he again illegally re-entered the United States, made his way back to Greenville, and resumed living with his common-law wife.

For several years, Mendoza managed to avoid attracting the notice of immigration officials, and it was during this period that his two children in Greenville were born, the first in 2005 and the second in 2007. In early 2008, however, a state-law assault charge was brought against him, and although he was never prosecuted, federal authorities were once again alerted to his presence. In May of that year, he was charged under 8 U.S.C. § 1326 with illegal entry into the United States following deportation.

He pled guilty on July 7, 2008. A presentence report was prepared, which calculated Mendoza's sentence under the Sentencing Guidelines as forty-six to fifty-seven months' imprisonment. This calculation reflected a substantial enhancement based upon his earlier indecent liberties conviction, which, in addition to raising his criminal history category, triggered a sixteen-level increase in his offense level because it was labeled a "crime of violence." *See* U.S. Sentencing Guidelines Manual §§ 2L1.2(b)(1)(A)(ii), 4A1.1(c), Ch. 5, Pt. A (Table) (2007); *United States v. Diaz-Ibarra*, 522 F.3d 343, 353 (4th Cir. 2008). Without the indecent liberties conviction, his Guidelines range would have been zero to six months' imprisonment.

Mendoza argued that while his prior indecent liberties conviction might "technically and legally" qualify as a crime of violence under the Guidelines, "the court is not bound by the Guidelines and . . . this is a prime example of the type of case where the Guidelines do not take into consideration sufficiently" the factors listed in 18 U.S.C. § 3553(a), which govern federal sentencing. Given his five-year continuing relationship with the young woman at the center of his indecent liberties conviction and given the fact that she and their two children were financially dependent on him and had been evicted from their home since his arrest, Mendoza argued his case was not one in which his prior conviction showed he was a danger to the public or that a strict sentence would be in the interest of the victim of his earlier crime.

The government responded that Mendoza had illegally entered the United States three times and that he "had his chance." It also argued that Mendoza did represent a danger to the public, pointing to a prior drunk driving conviction and three prior drunk driving arrests that had been dismissed, the assault charge that had led to his prosecution in this case, and an earlier assault charge that had been dismissed.

After hearing from both sides, the district court sentenced Mendoza to the Guidelines minimum of forty-six months,

slightly less than four years. In announcing its conclusion, the district court made the following prefatory remarks:

> I have determined, though I have not agreed with, that the Guideline calculations are correct, and unless I find a reason for a departure from those Guidelines, or a variance based on 18 U.S.C. § 3553, then I am obligated to pass a sentence within that Guideline range.

The court then discussed certain § 3553(a) factors and concluded none of them could be used to justify reducing Mendoza's sentence below the Guidelines minimum. The court rejected the government's claim that Mendoza was dangerous to others, but opined that since Mendoza had already illegally entered the United States three times, "the bottom line is that viewing it as objectively as I possibly can, I cannot see any reason for a variance." Mendoza now claims that the sentence imposed by the district court was procedurally unreasonable.

## II.

We review briefly the sentencing framework relevant to this proceeding. In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that sentence enhancements under the then-mandatory Sentencing Guidelines violated the Sixth Amendment right to trial by jury. *Id.* at 244. The Court chose to remedy the situation by rendering the Guidelines "effectively advisory." *Id.* at 245. Post-*Booker*, a sentencing court must begin "by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines thus serve as "the starting point and the initial benchmark." *Id.* The ultimate question, however, is whether the sentence is "sufficient, but not greater than necessary" in light of the factors identified in § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 111 (2007) (quoting § 3553(a)).

A court therefore must proceed by giving the parties "an opportunity to argue for whatever sentence they deem appro-

priate." *Gall*, 552 U.S. at 49. It must then "make an individualized assessment based on the facts presented" to see whether the § 3553(a) factors support either party's claim. *Id.* at 49-50. Finally, the court must sufficiently explain its decision "to satisfy [an] appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority" in light of § 3553(a). *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (quoting *Rita*, 551 U.S. at 356); *see also Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009) (per curiam); *Gall*, 552 U.S. at 50.

Under this regime, appellate courts examine sentencing determinations under an abuse-of-discretion standard, which translates to review for "reasonableness." *Booker*, 543 U.S. at 261-62. Reasonableness review has procedural and substantive components. *See Gall*, 552 U.S. at 51. Procedural reasonableness evaluates the method used to determine a defendant's sentence. A sentencing determination that does not conform to the procedural framework outlined above is procedurally unreasonable. *Id.* Substantive reasonableness examines the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a). *Id.*

While it is clear that treating the Guidelines as mandatory is procedurally unreasonable after *Booker*, the precise role the Guidelines are to play in sentencing determinations has been a source of some confusion. In *Rita*, 551 U.S. 338, the Supreme Court addressed the question of whether the Guidelines could be given presumptive weight. The Court held that an appellate court is allowed to presume that a district court's chosen sentence is substantively reasonable if it is within a correctly calculated Guidelines range. *Id.* at 351. *Rita* was also clear, however, that a district court making the initial sentencing decision may not presume that the appropriate sentence in a given case will come from the Guidelines. *Id.*; *see also Nelson*, 129 S. Ct. at 892; *Gall*, 552 U.S. at 50; *United*

*States v. Raby*, 575 F.3d 376, 382 (4th Cir. 2009); *United States v. Smith*, 566 F.3d 410, 414 (4th Cir. 2009). If a district court applies such a *Rita* presumption, its sentence is procedurally unreasonable. *Gall*, 552 U.S. at 50.

We shall refer to any presumption in favor of a Guidelines sentence as a "*Rita* presumption." The reason *Rita* presumptions are forbidden in sentencing courts is that they confer the force of law upon the Guidelines. *See id.* at 47, 50. Such a *Rita* presumption means that, unless there is an effective rebuttal, a sentencing court is obligated to pronounce a Guidelines sentence. Giving mandatory effect to the Guidelines in this way revives the Sixth Amendment problems *Booker* laid to rest. *See Rita*, 551 U.S. at 347, 351, 353. Additionally, *Rita* presumptions at trial conflict with the reason *Rita* presumptions are allowed on appeal. An appeals court may presume a sentence within the Guidelines is reasonable because the sentencing court's independent judgment coincides with that of the United States Sentencing Commission, which bears responsibility for the Guidelines. If *Rita* presumptions were used at sentencing, appellate courts, as well as the Commission, would lose the benefit of a district court's individualized application of the Commission's general judgment. *See id.* at 350-51.

III.

The parties vigorously dispute whether the district court did in fact apply an impermissible *Rita* presumption at sentencing in this case. Because the costs of sentencing review are significant, it is important to realize not only what an impermissible *Rita* presumption is, but also what it is not. First, it was no *Rita* presumption for the sentencing court here to use the Guidelines to orient its thinking. A court must consider and may be influenced by the Guidelines. The Supreme Court has been clear that the process of sentencing begins with correctly calculating the Guidelines sentencing range. *Gall*, 552 U.S. at 49. And although courts are free to depart from the Guide-

lines, they are expected to explain the basis of their disagreement. *Nelson*, 129 S. Ct. at 892. Indeed, "a major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50. Similarly, while sentencing courts must always conduct an individualized assessment, they are permitted to provide more abbreviated explanations when they sentence within the Guidelines. *United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010); *United States v. Johnson*, 587 F.3d 625, 639 (4th Cir. 2009).

Second, the district court does not apply a *Rita* presumption simply by selecting a Guidelines sentence in the case or by deeming it the most fitting or appropriate sentence for the case. After all, we may and do treat on appeal a district court's decision to impose a sentence within the Guidelines range as presumptively reasonable. *See United States v. Herder*, No. 08-4420, 2010 WL 476657, at *8 (4th Cir. Feb. 11, 2010). For one thing, "the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350. Moreover, in devising the Guidelines, the Sentencing Commission "examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time." *Id.* at 349; *see also United States v. Johnson*, 445 F.3d 339, 342 (4th Cir. 2006). We therefore should hardly be surprised if Guidelines sentences are often reasonable, as *Rita* put it, at the "retail" as well as the "wholesale" level. *Rita*, 551 U.S. at 348.

Third, where an appellate court believes that a sentencing court did not treat the Guidelines sentence as presumptively applicable, then there is no *Rita* presumption and a remand should not follow—even if stray language in the sentencing court's discussion, standing alone, could give the impression that a presumption was used. *See Puckett v. United States*, 129 S. Ct. 1423, 1432 (2009); *Lynn*, 592 F.3d at 576-77 (procedural sentencing errors are subject to either harmless or plain error review). Sentencing courts are of course well

advised to avoid words like "presumption" and "obligation." But what matters on appeal is what a court actually did, not whether a remark here or there, removed from the larger context in which it was made, is on some list of forbidden phrases. *See United States v. Mooney*, 534 F.3d 944, 947 (8th Cir. 2008) ("[W]hen these statements are considered in their full context, it is clear that the district court understood the Guidelines were not mandatory."); *United States v. Bain*, 586 F.3d 634, 637-38 (8th Cir. 2009); *see also United States v. Sayad*, 589 F.3d 1110, 1118 & n.3 (10th Cir. 2009). If the sentencing court did what it was supposed to do—hearing out both sides and making an individualized assessment in light of § 3553(a)—then it should be protected from claims of having applied a *Rita* presumption.

In this regard, the government insists that vacatur here would indeed involve ripping the contested remarks out of context, to the detriment of "the sentencing transcript as a whole." Appellee's Br. at 14. We agree with the government as a general matter that nitpicking a district court's sentencing judgments for *Rita* presumptions would be inappropriate. For one thing, it burdens district courts with unwarranted remands. Where the district court gave thought to the sentence it passed and concluded it was appropriate in light of § 3553(a), then a remand is almost certainly going to result in imposition of the same sentence. *See Lynn*, 592 F.3d at 576-77. Appellate flyspecking for *Rita* presumptions wastes both courts' time, discourages sentencing courts from freely and fully explaining their reasoning, and distorts the proper relationship between trial courts and courts of appeal. Our mandate is to make sure the trial court made a reasoned, not an arbitrary, sentencing decision. It is not to fill the federal dockets with yo-yo sentencing litigation.

A flyspecking approach is also inappropriate because it goes against the grain of *Rita* and *Gall*, both of which emphasized the greater measure of latitude district courts must be given in sentencing determinations. To be sure, that latitude

is hardly unlimited. *See*, *e.g.*, *United States v. Engle*, 592 F.3d 495, 501-506 (4th Cir. 2010) (vacating as unreasonable a tax evasion sentence of probation and home detention with work release and international travel privileges). But *Gall*, for instance, overturned an appellate court's sentencing reversal because it did not "reflect the requisite deference" owed to sentencing courts. *Gall*, 552 U.S. at 52; *see also Rita*, 551 U.S. at 357-58 ("The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court.").

It would be wholly contrary to the Supreme Court's conferral of discretion on trial courts if we were to play a game of "Gotcha!" with respect to the sentencing transcripts we review. *See Johnson*, 445 F.3d at 345 (a sentencing court need not "robotically tick through § 3553(a)'s every subsection."). This appellate deference is especially appropriate when Guidelines sentences are imposed because in such a case the judgment of the sentencing court and the judgment of the Sentencing Commission have converged. *See Rita*, 551 U.S. at 350-51. To be sure, we review such sentences, like all others, for procedural error, but we do so under "the deferential abuse-of-discretion standard of review that applies to all sentencing decisions" and only for error that is "significant." *Gall*, 552 U.S. at 51-52. Badgering district courts over minor procedural flaws simply fails to recognize the sense of responsibility that our colleagues on the district bench bring to the important task of sentencing.

## IV.

Much of what the district court did in this case was unassailable. The district court consulted the Guidelines, gave both sides a chance to make their case, and offered an individualized assessment with reference to the § 3553(a) factors. In imposing sentence, the district court might have concluded that Mendoza's indecent liberties conviction justified the lon-

ger sentence, as the Guidelines advised, but the record suggests it did not do so. In reaching its final decision, the district court may have concluded that while the indecent liberties conviction did not justify increasing Mendoza's sentence to forty-six months as the Guidelines suggested, the fact that, among others, he had entered the United States illegally three times justified increasing his sentence to that length. If this is what the court did, then its decision may well have been reasonable.

Mendoza, however, argues for another reading of the sentencing proceeding. In his view, the district court reasoned that while the indecent liberties conviction did not require such a lengthy sentence, it could not deviate from the Guidelines unless some specifically authorized basis for a departure or variance allowed it to do so. Under *Rita*, of course, this would not be permissible. And after fully examining the district court's discussion, this second reading seems at least as plausible to us as the first.

The comments to which Mendoza objects were not a "mere passing reference," somewhere in the middle of the sentencing discussion. *Sayad*, 589 F.3d at 1118 n.3 (citation and internal quotation marks omitted). They came at the very outset, framing the entirety of the district court's explanation. And the words the court used were emphatic: the court declared that it was "obligated" to impose a Guidelines sentence "unless I find a reason for a departure from those guidelines, or a variance based on 18 U.S.C. § 3553." Furthermore, the court pronounced a Guidelines sentence even though it had "not agreed with" the range recommended by the Guidelines. Taken together, the language and context of these statements convince us that Mendoza's objection cannot be dismissed simply as hyper-sensitive second-guessing of the proceedings below.

Our review of the district court's comments leads us to believe that the district court accorded the Guidelines a quasi-

mandatory effect, and that is impermissible under *Rita*. We are acutely conscious of the need to avoid overburdening district courts and ordering pointless remands, and we are compelled to re-emphasize that procedural remands do not carry some hidden appellate message of substantive unreasonableness. But there is a serious possibility the district court felt it was under an obligation to impose a Guidelines sentence, and we believe the prudent course is to remand this case to ensure that Mendoza's sentence, whatever it may ultimately be, is procedurally sound. In reviewing a sentencing determination, "an appellate court may not guess at the district court's rationale," *Carter*, 564 F.3d at 329, and we are left only to speculate as to whether the sentence herein was imposed as a matter of obligation or as an exercise of judgment.

## V.

For the foregoing reasons, we vacate Mendoza's sentence and remand for re-sentencing.

### *VACATED AND REMANDED*

DAVIS, Circuit Judge, concurring in the judgment:

The distinguished and experienced district judge in this case gave both sides an opportunity to present whatever argument they wished as to the appropriate sentence. The record reflects that both the government and the defendant took advantage of that opportunity. As a part of her argument, defense counsel stated:

> [A]fter the Booker case, the court is not bound by the guidelines, and I would suggest to the court that this is a prime example of the type of case where the guidelines do not take into consideration sufficiently the—all of the factors that are outlined in 18 U.S.C. 3553(a).

J.A. 42. The court then explained its perspective on the case and its underlying reasoning for imposing the sentence it did at some length, with sensitivity and a full awareness of the inevitably tragic circumstances surrounding virtually every criminal sentencing hearing. Here is what the court said:

> The Court: Well, as in most criminal cases, there are tragic consequences for innocent victims. The court received a letter through defense counsel with pictures of the family from the young woman who is the mother of two children by this defendant, and I had a letter from her attesting to her love for the defendant and desiring that he come back home, all of which, of course, touch at the heartstrings of any individual, including an old seasoned judge.
>
> Nevertheless, the court has to remember that the crime that the defendant is before me on is illegal entry into the United States. *I have determined, though I have not agreed with, that the guideline calculations are correct, and unless I find a reason for a departure from those guidelines, or a variance based on 18 U.S.C. section 3553, then I am obligated to pass a sentence within that guideline range.* And upon reflection, this court is unable to determine a need for variance. The purposes of sentencing are to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.
>
> As indicated by [the Assistant United States Attorney], this defendant has—this is his third illegal entry into the United States. So certainly [I] cannot say that the proposed guideline range fails to achieve those objectives . . . . to afford adequate deter[r]ence to criminal conduct. And the criminal conduct we are talking about, you must remember, is illegal re-entry. It's not the activity with the young woman

who is now his mistress or common law wife or whatever. And I don't really know what is adequate to deter his illegal entry to the United States. I mean, he has been deported. He is back. Been deported. He is back again.

And you might say on his behalf that he is coming back to be with the woman he loves and the children he loves.

But as [the Assistant United States Attorney] points out, he has a woman he loved, past tense, and children as a result of that relationship back in Mexico. So, I don't—really don't know what—I can't argue with the guideline range as far as providing adequate deterrence to protect the public from further crimes of the defendant, that crime being illegal entry. I don't know that the guidelines will even do it then. Nothing else has up until now.

But in any event, the bottom line is that viewing it as objectively as I possibly can, I cannot see any reason for a variance. So I feel that it's my duty, though I have some sympathy for his—the mother of his children down in Greenville and those children there, I am not too concerned about the assault charges there . . . . I have lived through too many Monday morning recorders . . . court and district court hearings when women have taken warrants out against their husband or boyfriend for assault, and by the time Monday morning gets there, they come into court and say they want to—as back in those days, they want to take out the charges, they have kissed and made up.

So, I know it's—it would be nice if that type of thing didn't happen in our society, but as long as the people who are subjected to the messy domestic vio-

> lence don't pursue it and get it corrected themselves, there is little anyone else can do.
>
> So, in any event, Mr. Mendoza-Mendoza, if you will stand up, please. Stand up. Except heretofore stated, the court finds the basis for findings contained in the presentence report credible, and therefore adopts those findings.
>
> Based on those findings, the clerk calculated the range prescribed by the advisory sentencing guidelines. The court has considered that range as well as all other relevant factors set forth in the advisory sentencing guidelines, and those set forth in 18 U.S.C. Section 3553(a).
>
> Pursuant to the Sentencing Reform Act of 1984 and in accordance with the Supreme Court decision in United States versus Booker, it's the judgment of the court that the defendant, Dario Mendoza-Mendoza, be committed to the custody of the Bureau of Prisons for a term of 46 months.

J.A. 48-51 (alterations and emphasis added). It is not easy to discern a "procedural irregularity" in this record. The court referred to "*Booker*" and, separately, to the "advisory sentencing guidelines" several times in its soliloquy. Read in their entirety, the court's comments reflect that it was aware that it possessed the authority to impose a sentence below (or above, for that matter) the applicable guidelines range.

   Nevertheless, as we judges know as well if not better than most anyone, words matter. And the highlighted portion of the above excerpt from the sentencing transcript shows that the court employed the word "obligated" in a way that permits us, but does not compel us, to find a procedural irregularity and to remand for a new sentencing hearing. Unlike the majority, I do not "believe that the district court accorded the

Guidelines a quasi-mandatory effect." *See* Maj. Op. at 11-12. On the other hand, I cannot say that a remand to permit the court to clarify its language is unwarranted. Accordingly, I concur in the judgment.