**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-4260

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ORENTHAL JAMES DENDY,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Greenville. Henry F. Floyd, District Judge. (6:09-cr-00565-HFF-1)

Argued: May 10, 2011                    Decided: July 14, 2011

Before TRAXLER, Chief Judge, and AGEE and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** David Wilson Plowden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenville, South Carolina, for Appellant. William Jacob Watkins, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee. **ON BRIEF:** William N. Nettles, United States Attorney, Columbia, South Carolina, A. Lance Crick, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Orenthal James Dendy appeals his sentence for possession with intent to distribute and distribution of crack cocaine and for use of a firearm in furtherance of a drug trafficking crime. He argues that the district court inadequately explained its reasons for imposing a sentence within the guidelines range and rejecting his arguments for a lesser sentence. He also contends that his sentencing hearing was tainted by a statement the district court made regarding our guidelines precedent. Finding no error, we affirm.

I.

On several occasions in 2008, Dendy sold crack cocaine to a confidential informant working for the Simpsonville, South Carolina police department. On the basis of these transactions, the police obtained and executed a search warrant for Dendy's residence. The search revealed crack cocaine, drug paraphernalia, a firearm, and ammunition. A federal grand jury returned a five-count indictment against Dendy; he subsequently pleaded guilty to Counts One and Five. Count One charged Dendy with possessing with intent to distribute and distributing cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Count Five charged Dendy with

knowingly using and carrying a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

The United States Probation Office prepared a presentence report ("PSR"), which calculated Dendy's sentence under the guidelines as a range of 21 to 27 months' imprisonment for Count One, based upon a total offense level of 15 and a criminal history category of II, plus a mandatory consecutive 60 months' imprisonment for Count Five. The PSR also described Dendy's personal characteristics in some detail. The description included specific information about Dendy's family relationships; physical condition; mental health, including details about his mental illness diagnosis, medications, and treatment; substance abuse history; vocational and nonvocational education; employment record; and financial circumstances.

At sentencing, the district court recited the recommendations of the PSR regarding the applicable guidelines range. After verifying that neither party objected to the contents of the PSR, the district court adopted the factual findings of the PSR as a basis to evaluate the sentencing factors of 18 U.S.C. § 3553(a). Both the government and defense counsel presented sentencing arguments. The government argued for a within-guidelines sentence, while counsel for Dendy asked the district court to impose a total sentence of 60 months' imprisonment. Because the mandatory minimum for Count Five

3

required a sentence of 60 months, Dendy's request in reality constituted a request for a downward variance (to zero) from the 21 to 27 months guideline range for Count One.

In support of this request, defense counsel pointed to Dendy's relatively light criminal history (as already reflected in the PSR) and asked the court to consider, as grounds for the variance, the sentencing disparity between crack cocaine and powder cocaine, Dendy's mental illness, and Dendy's inability to maintain employment as a result of that illness. Dendy's counsel argued that Dendy was selling crack not to support his own use, but rather to earn money to help offset his parents' support of him during his unemployment. Based upon these considerations, defense counsel argued that a sentence of 60 months would accomplish the goals of sentencing as expressed in the § 3553(a) factors. Thereafter, both Dendy and his father made oral statements in which they underscored the hardships associated with Dendy's mental illness, particularly Dendy's difficulty keeping a job and his resulting financial troubles.

After hearing the respective arguments by the parties, the district court explicitly rejected Dendy's request for a downward variance based upon the sentencing disparity between crack cocaine and powder cocaine. The district court reasoned that in its view, crack is a more dangerous drug than powder cocaine. With regard to Dendy's remaining arguments, the

4

district court explicitly agreed with the government's analysis of the relevant § 3553(a) factors. The district court sentenced Dendy to 21 months for Count One, which was the bottom of the guidelines range, plus the mandatory consecutive sentence of 60 months for Count Five, for a total sentence of 81 months.

## II.

A distinct sentencing framework has emerged from the Supreme Court's sentencing decisions since United States v. Booker, 543 U.S. 220 (2005), the decision in which the Court rendered the once-mandatory federal sentencing guidelines advisory. See, e.g., Gall v. United States, 552 U.S. 38, 46-60 (2007); Rita v. United States, 551 U.S. 338, 347-60 (2007). The framework imposes specific procedural requirements upon district courts for the sentencing of criminal defendants. A sentencing court must begin its determination by correctly calculating the defendant's sentencing range under the guidelines, which is the proper "starting point and the initial benchmark" for the court's decision. Gall, 552 U.S. at 49. Thereafter, the court must allow the parties to argue for whatever sentence they deem appropriate and consider their arguments in light of the sentencing factors set forth in § 3553 (a). See id. at 49-50. The court must then choose a sentence based on an "individualized assessment" of the facts presented. Id. at 50.

5

After selecting the appropriate sentence, the court must "adequately explain the chosen sentence." Id. See also 18 U.S.C. § 3553(c) (requiring sentencing courts to "state in open court" their reasons for imposing a particular sentence). Apart from these procedural requirements, a district court enjoys "substantial discretion" in selecting a sentence. United States v. Raby, 575 F.3d 376, 381 (4th Cir. 2009).

Under this sentencing framework, we review sentencing determinations for reasonableness under an abuse-of-discretion standard. Gall, 552 U.S. at 51. Our reasonableness review involves both procedural and substantive elements. Procedural reasonableness—the sole issue here—concerns the method by which the district court decided the defendant's sentence; a sentencing determination that does not conform to the procedural requirements outlined above is procedurally unreasonable. Accordingly, our review requires us to ensure that the district court

> committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.

Id. If we find that the district court committed such procedural error, and thus abused its discretion, we reverse

6

unless we determine that the error was harmless.[*] See United States v. Boulware, 604 F.3d 832, 838 (4th Cir. 2010); United States v. Lynn, 592 F.3d 572, 576 (4th Cir. 2010).

III.

Dendy first contends that the district court committed procedural error by failing to adequately explain the within-guidelines sentence it imposed upon him. We disagree.

When imposing a sentence, a district court "must make an individualized assessment based on the facts presented." Gall, 552 U.S. at 50; see also Lynn, 592 F.3d at 576; United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009). The district court must also provide an explanation for the sentence it imposes. See 18 U.S.C. § 3553(c). "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Rita, 551 U.S. at 356. "This not only 'allow[s] for meaningful appellate review' but it also 'promote[s] the perception of fair sentencing.'" Carter, 564 F.3d at 328 (quoting Gall, 552 U.S. at 50). Furthermore, if

---

[*] Because Dendy argued at sentencing that the § 3553(a) factors warranted a sentence below the applicable guidelines range, his claim of procedural error is properly preserved for appellate review. See United States v. Lynn, 592 F.3d 572, 578-79 (4th Cir. 2010).

7

a party presents legitimate reasons for imposing a sentence outside the applicable guidelines range, the sentencing judge "will normally go further and explain why he has rejected those arguments." Rita, 551 U.S. at 357; see Carter, 564 F.3d at 328.

Although an adequate explanation must accompany every sentence, the explanation may be brief. See Rita, 551 U.S. at 356. The appropriate breadth and depth of a sentencing court's exposition depends upon the circumstances. See id. at 356-57. A sentence within the guidelines range generally requires a less extensive justification than a sentence that departs or varies from the guidelines. See United States v. Johnson, 587 F.3d 625, 639 (4th Cir. 2009). "This is because guidelines sentences themselves are in many ways tailored to the individual and reflect approximately two decades of close attention to federal sentencing policy." Id. (internal quotation marks omitted).

Here, it is undisputed that the district court correctly calculated Dendy's sentencing range under the guidelines, allowed both parties to present arguments for the sentences they thought appropriate, and also heard personal statements by the defendant and his father in support of their request for a below-guidelines sentence. The record also reflects that the district court "considered the parties' arguments" in light of the sentencing factors of § 3553(a) and had a "reasoned basis" for its decision to reject Dendy's arguments for a below-

8

guidelines sentence in favor of the guidelines sentence requested by the government. Rita, 551 U.S. at 356. The district court adopted the undisputed factual findings of the PSR as a basis to evaluate the § 3553(a) factors, as well as the conclusions of the PSR and the government's sentencing recommendation as to the effect of those factors. In sum, the district court made an "individualized assessment based on the facts presented." Gall, 552 U.S. at 50.

We also hold that the district court's explanation for Dendy's within-guidelines sentence was adequate and reflected this individualized assessment of Dendy's circumstances. At the sentencing hearing, the district court first explicitly acknowledged Dendy's argument regarding the sentencing disparity between crack and powder cocaine and dismissed it on the ground that in the court's view, crack is more dangerous than powder. The district court also heard and considered the personal statements of Dendy and his father. However, the district court agreed with the government's position regarding the appropriateness of a within-guidelines sentence. While the district court did not explicitly address or reject each issue raised by Dendy, the court's statements during sentencing make it clear that the court considered Dendy's individualized circumstances when imposing the sentence. Given the nature of the arguments raised at sentencing, we conclude that the

district court adequately explained the basis for its within-guidelines sentence. See Johnson, 587 F.3d at 639 (noting propriety of lesser justification where guidelines sentence already reflects individualized circumstances); see also United States v. Wood, 587 F.3d 882, 884 (8th Cir. 2009) (holding, in the context of a within-guidelines sentence, that "not every reasonable argument advanced by a defendant requires a specific rejoinder by the judge" (internal quotation marks omitted)).

For the foregoing reasons, we hold that the district court's explanation, though not lengthy, was sufficiently individualized and adequate to justify the within-guidelines sentence imposed. It is clear that the district court heard and considered the respective arguments and had a reasoned basis for rejecting Dendy's request for a downward variance and instead imposing a sentence at the bottom of the guidelines range. Accordingly, we find no procedural error attributable to the district court's explanation of Dendy's sentence.

IV.

Dendy next argues that his sentencing proceeding was tainted by the district court's statement: "[F]rankly the Fourth Circuit is pushing us back into the guidelines. They really are." J.A. 66. Specifically, Dendy contends that this statement "raises the serious possibility that the district

10

court felt it was being pressured to impose a guidelines sentence." Br. of Appellant at 11. We disagree.

At the outset, we recognize that it is procedurally unreasonable for a sentencing court to treat the guidelines as mandatory. See United States v. Mendoza-Mendoza, 597 F.3d 212, 216 (4th Cir. 2010). Likewise, it is procedural error for a district court to presume that a sentence within the guidelines is reasonable or appropriate in a given case. Nelson v. United States, 129 S. Ct. 890, 892 (2009) (per curiam); Rita, 551 U.S. at 351; Raby, 575 F.3d at 381. We refer to a presumption in favor of a guidelines sentence as a "Rita presumption," after the Supreme Court decision that rejected the use of such presumptions by sentencing courts. Rita, 551 U.S. at 351 (holding that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply"); Mendoza-Mendoza, 597 F.3d at 217 (referring to any presumption in favor of a Guidelines sentence as a "Rita presumption").

A sentencing court does not apply a Rita presumption merely by using the guidelines to orient its thinking or by selecting a guidelines sentence. See Mendoza-Mendoza, 597 F.3d at 217. Furthermore, there is no impermissible Rita presumption if the appellate court concludes that the sentencing court did not regard the advisory guidelines range as presumptively

11

reasonable, "even if stray language in the sentencing court's discussion, standing alone, could give the impression that a presumption was used." Id. at 218. Although a sentencing court should avoid the use of words like "presumption" and "obligation" with respect to the guidelines, it is "what a court actually did" that is important on appeal, "not whether a remark here or there, removed from the larger context in which it was made, is on some list of forbidden phrases." Id. (internal quotation marks omitted). A sentencing court that "did what it was supposed to do [by] hearing out both sides and making an individualized assessment in light of § 3553(a)" should not be vulnerable to claims that it applied a Rita presumption. Id.

Here, when we consider the district court's statement in its full context, it is clear that the district court treated the guidelines neither as mandatory nor as presumptively reasonable. Immediately following the remark in question, the district court explicitly referred to the sentencing guidelines as "advisory" rather than mandatory. Moreover, the fact that the district court adopted the government's argument as to the effect of the § 3553(a) factors, after acknowledging its own consideration of those factors, shows the court's awareness of the latitude it possessed to determine an appropriate sentence.

The district court never spoke in terms of a presumption or words of an equivalent effect. We accordingly decline Dendy's

invitation to read a Rita presumption into the district court's ambiguous offhand remark. The district court's use of the word "pushing" does not indicate that the district court believed that it was obligated to impose a guidelines sentence. Cf. id. at 219 (holding that district court accorded guidelines an impermissible quasi-mandatory effect with its statement that it was "obligated to impose a Guidelines sentence" notwithstanding its disagreement with that sentence); Raby, 575 F.3d at 377 (holding that district court improperly presumed reasonableness of a within-guidelines sentence based on its comments that "Guidelines sentences 'are always reasonable and are presumed always reasonable'" and that imposing a outside-guidelines sentence was "'extremely difficult, if not impossible'"). Placing the district court's comment in the context here, we do not understand the district court to have intended the word "pushing" to confer a quasi-mandatory effect on the guidelines, especially when the court described the guidelines as "advisory" just 15 words later.

In light of these considerations, we view the district court's statement as a stray remark that ultimately had no bearing on the sentencing decision or its procedural reasonableness. We therefore conclude that the district court's statement did not constitute procedural error.

13

V.

For the foregoing reasons, we conclude that Dendy's sentence was procedurally reasonable.  We therefore affirm.

<u>AFFIRMED</u>