**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 20-4028

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

  v.

MERRILL ROBERTSON, JR.,

       Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., District Judge. (3:16-cr-00133-JAG-1)

Argued: January 29, 2021                          Decided: April 13, 2021

Before FLOYD and HARRIS, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Rowland Braxton Hill, IV, CHRISTIAN & BARTON, LLP, Richmond, Virginia, for Appellant. Katherine Lee Martin, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Stephen E. Anthony, Assistant United States Attorney, Kenneth R. Simon, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A federal grand jury charged Merrill Robertson in a fifteen-count indictment relating to his operation of a fraudulent financial investment and bank loan scheme. Following a jury trial, Robertson was convicted on all fifteen counts and the district court sentenced him to 480 months imprisonment. Robertson appealed. We vacated his conviction and remanded for a new trial after concluding that the district court did not adequately investigate whether the jury was exposed to an unfavorable news article published during the trial. *United States v. Robertson*, 760 F.App'x 214, 217-18 (4th Cir. 2019). On remand, a jury again convicted Robertson on all fifteen counts, and the district court sentenced him to 480 months imprisonment. Robertson now appeals for a second time, raising challenges to his conviction and sentence. For the following reasons, we affirm.

I.

After a successful college football career at the University of Virginia and a brief professional football career, Robertson began working as a financial advisor at Merrill Lynch. During his time at Merrill Lynch, Robertson received financial training and obtained professional certifications. Robertson also began siphoning client funds and sending them to his associate, Carl Vaughn, who would kick back some of the proceeds to Robertson. Using these funds as startup money, Robertson left Merrill Lynch and, in partnership with Vaughn, created Cavalier Union Investments (CUI). Vaughn was generally tasked with pursuing investment opportunities, and Robertson handled investor solicitation.

Over the next few years, by misrepresenting his education and trumpeting his experience at Merrill Lynch as a get-in-the-door card, Robertson held himself out as a successful businessman and experienced financial advisor. Robertson's persona bred success; between 2008 and 2016, he solicited almost $10 million from about 60 investors. Many of the investors were family friends, including his brother-in-law, his Sunday School teacher, his high school basketball coach, and the linebackers coach who had helped him enroll at Fork Union Military Academy and had recruited him to UVA. Robertson also carried himself as a deeply spiritual man, and he would frequently pray with his potential investors.

Robertson pursued individuals with retirement accounts as investors, promising that he could roll over these accounts into his investment portfolio. He would send investors promissory notes guaranteeing exorbitant returns and routinely supplied falsified paperwork stating the funds had been rolled over into tax-deferred retirement accounts. In order to gain his clients' trust, Robertson would mislead potential investors about CUI's assets, spinning tales of apartment buildings, assisted living facilities, hotels, and other real estate ventures. CUI's actual assets amounted to nothing more than a yogurt shop and several fly-by-night restaurants. None were profitable, in part because Robertson skimmed money from them. Instead of properly investing client funds, Robertson and Vaughn spent the money on charitable donations to churches, repayment to some early investors, and, not surprisingly, themselves.

By 2015, Robertson's investment businesses were closed. He had spent all the money previously collected from investors, and he was having difficulty raising new

capital. To keep his scheme afloat, Robertson began to investigate procuring fraudulent bank loans. Vaughn demurred, eventually backing out of his partnership with Robertson. This led Robertson to Marlon Hardy and two of Hardy's associates, all of whom had experience obtaining false loans from the Navy Federal Credit Union. Robertson and Hardy initially obtained loans in their own names and in family members' names. However, Robertson quickly turned to some of his former investors, many of whom were desperate for money, and conned them into obtaining loans. Robertson offered to assist their loan applications in exchange for a small fee, telling some that the money would help tide them over until their initial investments bore fruit while telling others they would not have to make payments on the loans. These statements were false, and Robertson instead pocketed most of the loan proceeds for himself and, in several instances, left his investors with personal debt.

The house of cards began crumbling in late 2015, when the Securities and Exchange Commission (SEC) began to investigate CUI. During the investigation, Robertson warned one investor not to cooperate, lest they delay return of their retirement savings even while admitting to the SEC that CUI had no money or assets.

Based on the foregoing, a federal grand jury indicted Robertson in a fifteen-count superseding indictment, charging Robertson with one count of conspiracy to commit mail and wire fraud (18 U.S.C. § 1349), five substantive counts of mail fraud (18 U.S.C. § 1341), two substantive counts of wire fraud (18 U.S.C. § 1343), one count of conspiracy to commit bank fraud (18 U.S.C. § 1349), four substantive counts of bank fraud (18 U.S.C. § 1344), and two counts of engaging in unlawful monetary transactions (18 U.S.C. § 1957).

Following a nine-day trial, a jury convicted Robertson on all fifteen counts. The district court sentenced Robertson to 480 months imprisonment. On appeal, we vacated Robertson's convictions and remanded for a new trial because the district court failed to properly investigate the jury's possible exposure to a potentially prejudicial article in the Richmond Times-Dispatch. *Robertson*, 760 F.App'x at 217-18.

On remand, following a ten-day trial, a new jury convicted Robertson on all fifteen counts. At the close of a lengthy sentencing hearing, the district court adopted the Pre-Sentence Report, which found an offense level of 38 and a criminal history category of I, yielding a Guidelines Range of 235-293 months. The district court varied upward from the Guidelines Range and sentenced Robertson to 480 months incarceration. This appeal followed.

## II.

On appeal, Robertson raises multiple challenges to his conviction and sentence, including whether the district court abused its discretion in denying a recusal motion and whether Robertson's sentence is unreasonable.[1] We address each in turn.

## A.

After we vacated Robertson's convictions and remanded for a new trial, Robertson moved for the district court's recusal. The district court denied the request, and we review

---

[1] Robertson raises several additional challenges to his conviction. We have reviewed these claims and find them to be without merit.

that denial for abuse of discretion. *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 167 (4th Cir. 2014).

As relevant here, judges have a "general duty to disqualify themselves in any proceeding in which their impartiality might reasonably be questioned." *Belue v. Leventhal,* 640 F.3d 567, 572 (4th Cir. 2011) (cleaned up) (citing 28 U.S.C. § 455(a)). In *Belue*, we explained that under *Liteky v. United States*, 510 U.S. 540 (1994), bias or prejudice must "as a general matter, stem from a source outside the judicial proceeding at hand." *Id.* (internal quotation marks omitted). Although not an "ironclad rule," this "extrajudicial source limitation" means that "parties would have to meet a high bar to achieve recusal based on in-trial predispositions." *Id.* at 573. That is, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" almost "never constitute a valid basis for a bias or partiality motion," nor do judicial comments "critical or disapproving of, or even hostile to, counsel, the parties, or their cases." *Liteky*, 510 U.S. at 555. Only comments and rulings that display a "deep-seated favoritism or antagonism that would make fair judgment impossible" will suffice. *Id.*

In arguing that recusal was required, Robertson points to several comments and actions taken by the district court during his first trial. After Robertson testified at his first trial, the district court *sua sponte* notified the parties that it was reconsidering Robertson's release on bond because, in the court's view, Robertson "is not a truthful person, and . . . he will do anything he needs to protect himself." *Robertson*, 760 F.App'x at 216. The court later revoked Robertson's bond, relying on the overwhelming "weight of the evidence

6

against him," his "demonstrably false" testimony, and "his willingness to victimize the people who are closest to him." *Id.* Then, at Robertson's first sentencing, the court varied upwards in sentencing Robertson to 480 months imprisonment. Finally, during a pretrial hearing on remand, the court reminded the parties that it had "already been reversed once in this case" and opined that it did "not prefer to be reversed twice." (J.A. 100-101). Based on these actions and comments, Robertson contends "it would appear to a reasonable person that Robertson did not enjoy a clean slate and presumption of innocence on remand." (Appellant's Br. at 19).

In denying the motion, the district court cited to *Liteky* and discussed several actions it had taken to *benefit* Robertson, namely granting multiple requests for a new attorney and reaching out to attorneys in the Richmond area to find counsel qualified to handle a complex financial fraud prosecution. The court acknowledged that it imposed "a long sentence," but explained that it "made great efforts [to explain the] sentence, probably the longest [it had] talked about a sentencing." (S.J.A. 23). The court further explained that its comments were "not [based on] facts gleaned from outside the record," but rather on the "damaging evidence that had come in" regarding Robertson's "culpability." (S.J.A. 24-25).

We discern no abuse of discretion in the district court's denial of the recusal motion. Robertson's allegations fall far short of the "egregious conduct" required in cases where a party moves for recusal based on in-trial actions and comments. *Belue*, 640 F.3d at 573. Instead, as we discussed during Robertson's first appeal, the court's comments were based upon the "overwhelming weight of the evidence" against Robertson, *Robertson*, 760 F. App'x at 216, and the fact that a judge becomes "exceedingly ill disposed towards the

7

defendant, who has shown to be a thoroughly reprehensible person," is not a grounds for recusal, *Liteky*, 510 U.S. at 550-551.

We make pellucid that "litigants may not make the trial judge into an issue simply because they dislike the court's approach or because they disagree with the ultimate outcome of their case." *United States v. Gordon*, 61 F.3d 263, 268 (4th Cir. 1995); *see also Belue*, 640 F.3d at 574 (noting recusal motions "cannot become a form of brushback pitch for litigants to hurl at judges who do not rule in their favor"). The district court's comments did not arise from an extrajudicial source and fall far short of the egregiousness required for recusal.

B.

Robertson next challenges his sentence. We "review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). This review encompasses two steps. We first examine the sentence for procedural reasonableness, ensuring that the court properly calculated the Guidelines range, considered the 18 U.S.C. § 3553(a) factors, and provided an adequate explanation for the sentence. *Id.* at 51. An adequate explanation is one which allows us to "conduct meaningful appellate review," *United States v. Provance*, 944 F.3d 213, 219 (4th Cir. 2019), and whether a particular explanation is adequate "depends on the complexity of each case," *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017). If we conclude no procedural error occurred, we then turn to the substantive reasonableness of the sentence, looking to the "totality of the circumstances" to ascertain "whether the sentencing court abused its discretion in

concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010). When the district court varies outside the Guidelines Range in pronouncing a sentence, we "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51.

1.

Robertson posits two arguments regarding the procedural reasonableness of his sentence: that the district court incorrectly applied a vulnerable victim enhancement and that the court failed to adequately explain the upward variance.

We can quickly dispose of the first argument. The district court imposed a two-level enhancement after concluding that Robertson's largest investor, JJ, is a vulnerable victim. This enhancement applies if "the defendant knew or should have known that a victim of the offense was a vulnerable victim." *U.S.S.G.* § 3A1.1(b). A victim can be "unusually vulnerable" as a result of a "mental condition." *U.S.S.G.* § 3A1.1 cmt. n.2. We review the factual finding that a victim was vulnerable for clear error, ensuring that the court provided a "fact-based explanation" of why "some . . . characteristic" made the victim vulnerable. *United States v. Shephard*, 892 F.3d 666, 670 (4th Cir. 2018) (internal quotation marks omitted).

Here, the court heard evidence from a law enforcement agent that included Robertson's own deposition testimony to the SEC. During this testimony, Robertson admitted that he knew JJ had "health issues, and he does forget some things," (J.A. 2738), that he has a "condition," (J.A. 2739), and that he has "bad days [where] he is not as sharp."

9

(J.A. 2739). Further, Robertson said he tried to ensure someone else was present when he met with JJ. Based on this testimony, and following an extended colloquy with Robertson's counsel, the court imposed the enhancement.

The district court's finding that JJ was a vulnerable victim is not clearly erroneous. By Robertson's own words, he knew JJ had days where he was forgetful and not as sharp as he should be. Vaughn also testified at trial that he and Robertson knew JJ's memory was poor. Thus, we readily conclude that the court did not clearly err in imposing the enhancement.

We now turn to Robertson's second argument: that the district court failed to adequately explain the reasons for and the extent of the upward variance. Robertson's Guidelines Range was 235-293 months imprisonment. The court ultimately varied upward to 480 months imprisonment. An upward variance is procedurally reasonable if the district court considers the extent of the deviation and makes certain that the justification for the variance is sufficiently compelling given the degree of the variance. *Gall*, 552 U.S. at 50. The greater the variance from the Guidelines range, the more "significant" the court's explanation should be. *Id.* However, although we require a sentencing court to provide an "individualized assessment" and "explain the sentence chosen," *United States v. Nance*, 957 F.3d 204, 212 (4th Cir. 2020) (internal quotation marks omitted), the court is under "no obligation to incant the specific language . . . or go through a ritualistic exercise" in which they tick through each § 3553(a) box, *United States v. Rivera-Santana*, 668 F.3d 95, 104 (4th Cir. 2012) (internal quotation marks omitted).

Robertson challenges the district court's explanation supporting the upward variance, focusing on the brevity of the district court's closing statement that, "the seriousness of the offense here requires an upward variance [because] [t]he amount of harm, the victimization of people, the preying on people's emotions is unparalleled in my experience." (J.A. 2886-87). Robertson's contention, however, overlooks the detailed analysis that preceded this summation. In fact, the court's statement of reasons spans almost twenty pages of transcript. In pronouncing Robertson's sentence, the court began by recounting that it had an excellent grasp of the case after having heard the Government's evidence twice. That evidence, the court explained, revealed several significant aggravating factors: the exploitation of people close to Robertson; Robertson's misuse of his expertise and financial savviness to prey on unsophisticated investors; and Robertson's callousness and lack of remorse as he ruined people's lives. As the court poignantly explained, "the people that he victimized got a life sentence," a sentence of "lost houses, fear of bankruptcy, working in what should be their retirement, of not being able to pay for their kids' weddings." (J.A. 2873-74). Despite this rampant destruction, sentencing was "the first time" Robertson offered "an apology to them." (J.A. 2874).

The court also took notice of the disparity in sentencing between Robertson and Vaughn, who received 144 months imprisonment. The court noted that Vaughn pled guilty, assisted the Government, and did not solicit business or abuse personal relationships. (J.A. 2884-85). Vaughn also left the conspiracy before Robertson began his bank loan scheme. Vaughn "didn't prey on his friends and mentors. He didn't . . . pray[] with people. I think his situation is simply different" than Robertson's. (J.A. 2885-86).

11

Lastly, the court indicated a variance was warranted as a matter of general deterrence. Recounting the increasing number of fraud cases in the Richmond area, the court remarked, "I know as I sit here that somebody is out there in the Richmond community doing this right now. . . . And I need to send a message to them to stop it . . . [or] there is going to be a price to pay." (J.A. 2884-85). Moreover, throughout sentencing the court consistently engaged with counsel, listened and weighed in on Robertson's arguments for a within-Guidelines sentence, and addressed each § 3553(a) factor in some manner.

Read in its entirety, the sentencing transcript shows that the district court used its "institutional advantage" to "listen, engage, and explain." *United States v. Fowler*, 948 F.3d 663, 672 (4th Cir. 2020). When the court does so, we "should be reluctant to hack and saw at [its] rulings." *Id.* The variance here is significant, but so is the statement of reasons that accompanies it. We see no procedural unreasonableness.

2.

Finally, Robertson challenges the substantive reasonableness of the sentence. In assessing substantive reasonableness, we examine the "totality of the circumstances" in determining whether the district court abused its discretion. *Mendoza-Mendoza*, 597 F.3d at 216. In doing so, we remain cognizant that sentencing courts "have extremely broad discretion when determining the weight to be given each of the § 3553(a) factors," *United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011).

As in our recent decision in *Nance*, we begin from the premise that the "record reflects that the district court conducted a thorough, individualized assessment of

12

[Robertson] and his offense conduct" under the § 3553(a) factors. *Nance*, 957 F.3d at 215. Considering the thoroughness of the court's approach, and mindful of our deferential standard of review, we cannot say that Robertson's sentence is substantively unreasonable. As referenced above, the court explained that two § 3553(a) factors counseled in favor of a significant departure: the seriousness of the offense and the necessity for deterrence.

Robertson argues that the court failed to grapple with his psychologist's expert report that his potential for recidivism was low and did not account for the sentencing disparity between Vaughn and him. Both are belied by the record. The court heard from the psychologist, engaged with counsel on the weight to be given the report, and ultimately concluded that while Robertson's report was "important," his crimes were not of the type that "only young people can commit." (J.A. 2885). *See Blue*, 877 F.3d at 521 (explaining that we can "infer that a sentencing court gave specific attention to a defendant's argument . . . if the sentencing court engages counsel in a discussion about that argument"). As to the sentencing disparity between Robertson and Vaughn, the court provided a robust explanation and defense of the differences in their sentences. *See supra* at 11. We find that explanation persuasive: the two defendants are not similarly situated because Vaughn and Robertson played different roles in CUI, Vaughn did not participate in the bank fraud scheme, and Vaughn pled guilty and assisted the Government's case against Robertson.

Robertson's complaint here is essentially that the district court gave significant weight to several § 3553(a) factors and not enough to others. However, "it is not required that the district court somehow give all the different factors precisely equal weight." *Fowler*, 948 F.3d at 672. In certain cases, "one factor will outweigh the others," while in

13

other cases "[another] factor will stand out." *Id.* Here, the district court made the determination that two factors—seriousness of the offense and general deterrence—stood out. It was not substantively unreasonable for the court to conclude that "it could not overlook the gravity of [Robertson's] conduct and its life-shattering consequences" for those he swindled. *Id.*

Examining the totality of the circumstances, and mindful of the deference due the district court in weighing the § 3553(a) factors, we cannot say that Robertson's sentence is substantively unreasonable. Robertson's sentence is, in fact, harsh. The variance is substantial. But it is the "rare occasion" on which we find a sentence substantially unreasonable. *United States v. Howard*, 773 F.3d 519, 531 (4th Cir. 2014). Even if we "might have imposed a different sentence" in the first instance, that rationale "is insufficient to justify reversal." *Provance*, 944 F.3d at 217. Our preceding discussion illustrates that "[i]n many ways, the district judge ran a model [sentencing] proceeding." *Fowler*, 948 F.3d at 668. By "conduct[ing] a thorough, individualized assessment of [Robertson] and his offense conduct in light of the § 3553(a) factors," the court reached a sentence that we cannot deem to be unreasonable. *Nance*, 957 F.3d at 215.

III.

For the foregoing reasons, Robertson's conviction and sentence is . . .

AFFIRMED.