# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1301

_____

United States of America,       *
      *
       Plaintiff-Appellee,     *
      *   Appeal from the United States
      v.                *   District Court for the
      *   District of South Dakota.
Delaney Poor Bear,         *
      *
       Defendant-Appellant.    *
      *

_____

Submitted: October 22, 2003

Filed: March 8, 2004

_____

Before BYE, HANSEN, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Delaney Poor Bear pleaded guilty to abusive sexual contact in violation of 18 U.S.C. §§ 2244(a)(2). He appeals his sentence, arguing that the district court clearly erred when it applied a cross-reference contained in the pertinent United States Sentencing Guidelines provision. For the reasons stated below, we reverse and remand for resentencing.

I.

Poor Bear pleaded guilty to the sole count of the indictment charged against him in which the Grand Jury alleged that he committed abusive sexual contact under 18 U.S.C. § 2244(a)(2) (2000). The Code defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." Id. § 2246(3).

The charge against Poor Bear arose out of his admitted criminal conduct on the Pine Ridge Indian Reservation. Poor Bear admitted to unlawfully touching a fifteen year-old female victim while she was passed out in her bedroom after a night of heavy drinking. Poor Bear, the victim, and several members of the victim's family gathered one evening to play cards, listen to music, and drink whiskey. After drinking excessively, the victim passed out in a bedroom. Sometime later, Poor Bear went into the bedroom and admitted that he committed abusive sexual contact. The victim was unconscious during this time, but her sister caught Poor Bear on the bed with the victim and called an ambulance. This appeal challenges the factual basis to support the district court's conclusion that Poor Bear touched the victim's genitalia underneath, as opposed to over, her clothing–a factual determination that significantly impacts his Guidelines range.

Poor Bear's plea agreement outlines the following criminal conduct:

> On January 17, 2001, Delaney Poor Bear was inside a residence in Allen, South Dakota, on the Pine Ridge Indian Reservation. Also inside the residence was [the victim], age 15. At one point in the evening, [the victim] was sleeping inside an interior bedroom. The Defendant entered the room and touched [the victim's] buttocks with his hand with an intent to gratify his sexual desire.

Appellant's Br., at 3 (quoting Statement of Factual Basis, at Addendum pg. 2).

The plea agreement also delineates the parties' agreement as to Poor Bear's base offense level for purposes of sentencing:

> It is further understood that in connection with the defendant's plea and sentencing, the United States will assert that the base offense level upon which the defendant's sentence is to be initially calculated, pursuant to U.S.S.G. § 2A3.4(a)(2), is 12, with an increase of 2 levels pursuant to U.S.S.G. § 2A3.4(b)(2), for a total offense level of 14. The defendant understands that these assertions are not binding on the Court.

Appellant's Br., at Addendum pg. 3 (plea agreement).

Thus, the parties agreed in their non-binding plea agreement that the Abusive Sexual Contact provision, U.S.S.G. § 2A3.4, controlled the determination of Poor Bear's base offense level. After increasing the base offense level by 2 because of the age of the victim, application of § 2A3.4 would have rendered a base offense level of 14. However, subpart (c) of the Abusive Sexual Contact Guidelines provision cross-references a harsher Guidelines provision when the conduct at issue constitutes criminal sexual abuse, as opposed to abusive sexual contact. Specifically, the cross-reference provides: "If the offense involved criminal sexual abuse or attempt to commit criminal sexual abuse (as defined in 18 U.S.C. § 2241 or § 2242), apply §2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse)." U.S.S.G. § 2A3.4(c)(1).

The Criminal Sexual Abuse Guideline provides for a significantly higher base offense level than does the Abusive Sexual Contact provision and sets the defendant's base offense level at 27, with a 2-level increase when the victim is between the ages of twelve and fifteen. U.S.S.G. § 2A3.1(b)(2)(B). For purposes of Poor Bear's case,

the critical difference between criminal sexual abuse and abusive sexual contact turns on whether he touched the victim's genitalia directly or through her clothing.

The Code defines criminal sexual abuse as engaging in "a sexual act with another person if that other person is– (A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." 18 U.S.C. § 2242(2). A "sexual act" is further defined as "the intentional touching, *not through the clothing*, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2446 (2)(D) (emphasis added). As noted above, "sexual contact" occurs regardless of whether the unlawful touching occurred directly or through the victim's clothing. See 18 U.S.C. § 2246(c). Poor Bear contends that the record in this case does not support the district court's conclusion that he committed a "sexual act" within the meaning of 18 U.S.C. § 2246(2)(D) and, therefore, that the district court should not have sentenced him under the Criminal Sexual Abuse Guidelines provision.

II.

Despite the parties' agreement that the Abusive Sexual Contact provision applied, the probation officer who prepared Poor Bear's pre-sentence report investigation, or "PSR," recommended that Poor Bear be sentenced under the harsher Criminal Sexual Abuse provision. Poor Bear timely objected to the probation officer's recommendation, as well as to the paragraphs detailing the factual allegations that would support the provision's application. At the sentencing hearing, the government did not seek enhancement of Poor Bear's sentence under the Criminal Sexual Abuse provision and did not offer any evidence in support of its application because to do so would have violated the parties' plea agreement. The district court, however, called the FBI agent who interviewed Poor Bear after his arrest and found

-4-

that the evidence showed that Poor Bear directly touched the victim's vagina. Therefore, the district court applied the Criminal Sexual Abuse provision and ultimately sentenced Poor Bear to the statutory maximum for his crime–three years.[1]

On appeal, Poor Bear argues that the district court's factual findings were clearly erroneous because, according to him, they were based on the objected-to paragraphs of the PSR, not on reasonable inferences drawn from the FBI agent's testimony. The probation officer who prepared the PSR gleaned the information contained in objected-to paragraphs from FBI investigation reports, which were not themselves offered or admitted into evidence. The objected-to paragraphs provided the following:

> Also highly intoxicated was the defendant, who some time later went into the victim's room. The defendant crawled onto the victim's bed, pulled down her pants, and touched her on and around the buttocks and vagina with his fingers, before he was caught by [the victim's sister] who entered the room to check on [the victim]. [The victim's sister] observed the defendant rolling around on the bed and trying to pull up his pants. The victim was found with her pants pulled part way down her legs.

PSR, ¶ 8, at p. 4.

In discussing the adjustment for acceptance of responsibility, the PSR provides:

---

[1]Poor Bear received a 3-level reduction for acceptance of responsibility, and he was a criminal history category I. Had the Abusive Sexual Contact provision, § 2A3.4, been applied, Poor Bear's Guidelines range would have been 10 to 16 months (after receiving a 2-level reduction for acceptance of responsibility). Application of the Criminal Sexual Abuse Guidelines provision rendered a sentencing range of 63 to 78 months. However, the statutory maximum sentence for violation of 18 U.S.C. § 2244(a)(2) is 36 months imprisonment. Therefore, the effective Guidelines range for imprisonment was 36 months.

The defendant initially denied any sexual contact with the victim when he was interviewed by investigating officers. He agreed to a polygraph examination; however, prior to the examination, he tearfully admitted to touching the victim's vagina directly with his fingers for approximately two to three minutes. The defendant's Statement of Factual Basis indicates he admits to touching the victim's buttocks. The defendant stated in his interview for this report that he does not recall specifically touching the victim, but he recalls going into her room and removing her pants. He believes that he touched the victim, but he does not specifically recall where.

PSR, ¶ 12, at p. 4. Apart from the information contained in these paragraphs, nothing in the PSR nor in Poor Bear's plea agreement supports a factual basis for the application of the Criminal Sexual Abuse provision, § 2A3.1.

The PSR is not evidence. United States v. Wise, 976 F.2d 393, 404 (8th Cir. 1992) (en banc). If the defendant objects to any of the factual allegations contained therein on an issue on which the government has the burden of proof, such as the base offense level and any enhancing factors, the government must present evidence at the sentencing hearing to prove the existence of the disputed facts. Id. The district court cannot rely on facts at sentencing that have not been proved by a preponderance of the evidence. United States v. Hammer, 3 F.3d 266, 272 (8th Cir. 1993). Here, the government declined to present evidence to prove the disputed facts. That is, that Poor Bear directly touched the victim's genitalia. The court, however, elected to call the FBI agent in charge of the Poor Bear investigation, Elizabeth Snyder. Her testimony consisted of the following:

BY THE COURT:
Q.    Ms. Snyder, would you please state your name for the record.
A.    Elizabeth A. Snyder.
Q.    What was your role in this case?
A.    I was assigned to do the investigation of Delaney Poor Bear.
Q.    As part of that investigation, did you interview Mr. Poor Bear?

-6-

A. Yes, I did.
Q. And during that interview, what did he say to you?
A. He stated that he did rub [the victim's] vagina for approximately two to three minutes with two or three fingers.
Q. Did he make that statement prior to his polygraph?
A. Yes, he did.
Q. After the polygraph, did he make any further statements?
A. The polygraph was not administered.
Q. So there wasn't a polygraph done?
A. No, ma'am.

Sentencing Tr., at 3-4. Because the PSR is not evidence and because no other evidence was offered, this testimony is the sole basis upon which the court was permitted to base its decision to sentence Poor Bear under U.S.S.G. § 2A3.1–the Criminal Sexual Abuse provision.

The government admits that some of the court's factual findings are not supported by the evidence. For instance, the court found that Poor Bear crawled into the victim's bed and pulled down her pants, but the FBI agent never testified to this, nor to other specific details found by the court. The government states that "[p]erhaps the district court inadvertently transposed information contained in the PSR into its findings of fact about the agent's testimony." Govt's Br., at 9. Nevertheless, the government argues that the testimony gave the court adequate grounds to sentence Poor Bear under the Criminal Sexual Abuse provision.

The court found, "[t]he defendant also told Ms. Snyder that he touched the victim's vagina with his fingers for about two to three minutes, so I don't believe that there's any ambiguity as to whether or not she had her pants down and whether he touched the vagina directly . . . ." Govt's Br., at 9 (quoting sentencing transcript, pp. 8-9). The government claims that the implication of Poor Bear's confession to Agent Snyder is clear and that "the district court drew a reasonable inference that in touching the child's vagina with two or three of his fingers, Poor Bear did so directly

-7-

and not through the clothing." Govt's Br., at 10.

A district court's finding of fact in connection with a United States Sentencing Guidelines determination is reviewed for clear error. United States v. Moskal, 211 F.3d 1070, 1073 (8th Cir. 2000). Poor Bear argues that the district court clearly erred when it based its findings of fact on a misunderstanding of the FBI agent's testimony. He urges this court to reject the government's reliance on inferences because, according to Poor Bear, the record shows that the district court did not infer anything from Agent Snyder's testimony, but rather incorrectly attributed several statements to her that she did not make, which, instead, came directly from the objected-to paragraphs of the PSR.

For reversal, Poor Bear relies on a line of authority that stands for the well-established proposition that "when the defendant makes a timely objection to the PSR, '[i]f the sentencing court chooses to make a finding with respect to the disputed facts, it must do so on the basis of evidence, and not the presentence report.'" United States v. Hudson, 129 F.3d 994, 994 (8th Cir. 1997) (per curiam) (quoting United States v. Burke, 80 F.3d 314, 316 (8th Cir. 1996); Fed. R. Crim. P. 32(i)(3). The evidence that the district court could rely on in making a factual determination regarding whether Poor Bear committed a "sexual act" within the meaning of 18 U.S.C. § 2246 included the unobjected-to portions of the PSR, the written factual basis of Poor Bear's plea agreement, and Agent Snyder's testimony. We agree that consideration of this evidence does not establish by a preponderance of the evidence that Poor Bear committed a "sexual act." Therefore, we likewise agree that the record does not support the district court's application of the Criminal Sexual Abuse Guidelines provision to determine Poor Bear's sentence.

In this case, the district court not only relied on the agent's testimony in making the critical determination that Poor Bear directly touched the victim's genitalia but also relied on the objected-to paragraphs of the PSR that were not supported by any

evidence in the record. This is evident because the agent's testimony was the only evidence offered on the issue of whether a "sexual act" occurred, and Agent Snyder did not testify as to the removal of the victim's pants nor to whether Poor Bear crawled into bed with the victim. The only suggestion that these events occurred were contained in the paragraphs of the PSR to which Poor Bear objected. Because these findings in particular are without record support, it was error to rely upon them.

Further, the district court's findings tie the removal of the victim's pants to the conclusion that Poor Bear touched the victim's vagina directly. Thus, the district court's factual finding that Poor Bear committed a "sexual act" was tainted by the erroneous finding that Poor Bear removed her pants and touched her vagina underneath her clothing.

In this regard, Poor Bear's case is analogous to United States v. Hudson, 129 F.3d 994 (8th Cir. 1997) (per curiam). In Hudson, the district court imposed a 2-level enhancement to the defendant's offense level after finding that she possessed a firearm in connection with her drug offense. Id. at 994. Hudson's PSR indicated that she possessed a gun on October 3, 1996 when a confidential informant examined a sample of methamphetamine that he intended to purchase the following day. Id. The next day, October 4, Hudson was arrested in her car, and the police recovered a handgun. Id. In a prior drug arrest in 1995, Hudson also had been found in possession of a firearm. Id. Based on these three incidents, Hudson's probation officer recommended a firearm enhancement under U.S.S.G. § 2D1.1(b)(1). Hudson, however, objected to the enhancement and specifically objected to the allegation in the PSR that indicated she possessed a gun on October 3. Id.

At Hudson's sentencing hearing, the probation officer who prepared the PSR testified regarding the gun found in Hudson's car on October 4. Id. The government offered no further sentencing evidence on this issue. Id. However, the district court found that the pistol recovered on October 4 established a "pattern" because Hudson

was also in possession of a firearm in connection with her drug-related activities on October 3 and in 1995.  Id. at 994-95.

On appeal, the Hudson court reversed the judgment of the district court and remanded the case for resentencing.  Id. at 995.  It held that the district court's finding that Hudson possessed a firearm on October 3 was clearly erroneous because it lacked any record support.  Id.  The only indication that Hudson possessed a firearm on that date was an allegation in the PSR, which Hudson objected to and, therefore, was not evidence.  Id.  The court's judgment was reversed because, "to the extent the district court relied on the October 3 incident to establish a 'pattern,' its 'pattern' finding [was] likewise flawed."  Id.

The district court in Poor Bear's case similarly made a critical factual determination on a disputed issue based, in part, on an erroneous factual finding–that is, that Poor Bear had removed the victim's clothing.  Because the district court's finding that Poor Bear committed a "sexual act" was partially based on this finding and because, absent the inferences that flow from this finding, the record does not support the conclusion that Poor Bear committed a "sexual act," Poor Bear should not have been sentenced under the Criminal Sexual Abuse Guidelines provision.

III.

Accordingly, we reverse and remand for resentencing.  We further direct that, on remand, resentencing be conducted on the existing sentencing record without the opportunity to reopen or add to the record.  See United States v. Hudson, 129 F.3d 994, 995 (8th Cir. 1997) (per curiam) ("Because we have clearly stated the governing principles as to when and how disputed sentencing facts must be proved, we direct that resentencing on remand be conducted on the existing sentencing record, with no opportunity for either party to reopen or add to that record.").

_____

-10-