**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-4556**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

NATHAN GLOVER,

        Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  W. Earl Britt, Senior District Judge.  (5:20-cr-00346-BR-1)

———————

Argued:  March 10, 2023                          Decided:  June 12, 2023

———————

Before NIEMEYER and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

———————

Affirmed in part, vacated in part, and remanded by unpublished opinion. Senior Judge Floyd wrote the opinion in which Judge Niemeyer and Judge Heytens joined.

———————

**ARGUED:**  Andrew DeSimone, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Andrew Carroll Noll, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:**  G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Appellate Division, Ethan A. Ontjes,

2

Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

—————————

Unpublished opinions are not binding precedent in this circuit.

FLOYD, Senior Circuit Judge:

On June 7, 2021, Defendant-Appellant Nathan Glover pled guilty to one count of possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court sentenced Glover to 78 months of imprisonment, to be followed by three years of supervised release. Glover now asks this Court to vacate his sentence and remand for resentencing. For the reasons that follow, we vacate and remand his sentence as to only the special financial conditions of supervised release. We otherwise affirm his sentence.

I.

Glover was a neighbor of Julian Mabry in Angier, North Carolina for a period of time, and he occasionally visited Mabry and Mabry's cousin, Miranda Mullen,[1] at Mabry's residence. On March 13, 2020, Mabry noticed that his .380 pistol was missing from a trunk at his bedside. The week before, Glover asked Mabry to borrow the gun, and Mabry refused, so Mabry suspected that Glover took it. Mabry then reported the suspected theft to the police. Surveillance footage and a pawn shop ticket confirmed that Glover pawned the pistol on March 13. The state charged Glover with possession of a firearm by a felon, breaking and entering, larceny, possession of stolen goods or property, and obtaining property by false pretense. During an interview with law enforcement, Glover admitted that he pawned the firearm but denied breaking and entering, asserting that Mabry permitted him to stay at the home. The state charges were later dismissed. On July 22,

---

[1] The sentencing transcript refers to Mabry's cousin as Miranda Mullen, but the PSR refers to her as "Meranda Molden." We refer to her as Miranda Mullen (or "Mullen") herein.

3

2020, a grand jury sitting in the Eastern District of North Carolina indicted Glover on one count of possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924. Glover pled guilty to this charge without a plea agreement.

Before sentencing, the Probation Officer (PO) prepared a Presentence Investigation Report (PSR). The PSR calculated a base offense level of 20 for Glover's unlawful possession offense. The PSR also applied a two-level enhancement because the firearm was stolen, as well as a four-level enhancement because Glover used or possessed the firearm in connection with another felony offense (felonious breaking or entering under North Carolina law)—for a total offense level of 26. The PO also denied a reduction in Glover's offense level for acceptance of responsibility because he twice tested positive for methamphetamine while on pretrial release. Glover mounted objections to both the four-level enhancement and the denial of the acceptance-of-responsibility reduction, which the PO denied. Based on Glover's criminal history category of III, the PSR calculated his advisory Guidelines range as 78 to 97 months of imprisonment.

At sentencing, the government called Mabry to testify about the events of March 13. Mabry testified that he and Glover were next-door neighbors and had known each other "a couple years." Joint Appendix (J.A.) 42, 45. He stated that, over the years, Glover visited his house several times to see him and Mullen and occasionally slept over. Mabry also explained that he kept a .380 pistol in a trunk beside his bed. About one week before the gun went missing, Glover asked to borrow it, and Mabry refused.

On March 13, Mabry continued, he left his house for two to three hours. When he returned, his gun was missing, but there was no sign of forced entry. Because Glover

4

previously asked to borrow the gun, Mabry assumed that Glover took it. He called Glover, who admitted to taking the gun, and asked him to return it. Glover replied that he was only borrowing the gun and would bring it back, but he never did. Mabry reported the theft to law enforcement the next day.

Mabry testified that he did not see Glover in his home when he left or when he returned, and that Mullen was asleep at both points. When asked whether Mullen was "awake when [Glover] entered the residence," he responded no, and that she was asleep when he arrived home. J.A. 44, 48. The court sustained Glover's objection when the government asked Mabry, "Did [Mullen] give [Glover] consent to enter the residence and take that gun?" J.A. 44. Mabry then testified that when he later spoke with Mullen about the theft of the gun, she told him that she did not know who took it. Mullen did not testify during the sentencing hearing.

Glover then testified on his own behalf. He stated that he was good friends with Mabry and Mullen, that he had visited Mabry's house several times, and that Mullen gave him permission to stay overnight on March 12. That day, he recounted, he and Mullen went out together, then went to Mabry's house. He showered at the house and fell asleep. When he awoke on March 13, Mullen was still asleep, and Mabry was out. At that point, he admitted, he took the gun. He explained that he believed that he could use the gun to borrow money, make the money back, retrieve the gun, and return it to Mabry's house before Mabry returned home. J.A. 51–52. He managed to pawn the gun, but when he tried to retrieve it, the pawn shop would not return it to him because he was a convicted felon. J.A. 52.

5

After this testimony, counsel for Glover conceded that Glover "took the gun," but asserted that he did not commit a breaking or entering that would give rise to the four-level enhancement for possessing a firearm during the commission of another felony. J.A. 53. The government responded that the four-level enhancement applied because Glover possessed the firearm during a felonious breaking or entering. It asserted that Glover entered the home while Mullen was asleep and Mabry was absent, and that he "had not been given consent to be inside [Mabry's] residence." J.A. 54. Further, it emphasized that law enforcement charged Glover with breaking or entering. The court then overruled Glover's objection to the four-level enhancement.

Glover also objected to the denial of the two-level reduction for acceptance of responsibility. The district court noted that Glover was addicted to methamphetamine and that "[o]ne of the conditions during his release pending sentencing was that he violate no federal law. He's done that. And I just don't see how I can approve acceptance of responsibility in that situation. The objection is, therefore, overruled." J.A. 58. The district court then adopted the PSR and its calculations of Glover's criminal history category of III, offense level of 26, and Guidelines range of 78 to 97 months. Had the court sustained Glover's objections, his offense level would have been 19, and his Guidelines range would have been 37 to 46 months.

The court sentenced Glover to 78 months of imprisonment, to be followed by three years of supervised release. While sentencing Glover, the court stated, "[T]he Court adopts and imposes the applicable special conditions of supervision referenced in the pre-sentence report." J.A. 69. In the event that the court ordered a fine, restitution, forfeiture, or notice

6

to victims, the PSR recommended two financial conditions of supervised release prohibiting Glover from "incur[ring] new credit charges or open[ing] additional lines of credit without approval of the [PO]" and requiring him to "provide the [PO] with access to any requested financial information." J.A. 97. The district court declined to order restitution, impose a fine, order forfeiture, or order notice to the victims, making these conditions inapplicable.

The district court then ordered Glover to "comply with the mandatory and standard conditions of supervised release adopted by the Eastern District of North Carolina as referenced in [S]tanding [O]rder 20-SO-8." J.A. 70. It also imposed three special conditions requiring Glover to participate in a narcotic addiction program, submit to warrantless searches upon reasonable suspicion, and support his dependents. The district court concluded the hearing by stating, "Mr. Glover, I was constrained by the sentencing Guidelines as to what sentence I gave you, even though your lawyer may disagree with that." J.A. 72.

The written judgment issued two days after sentencing and included as "additional standard conditions of supervision" the two financial conditions of supervised release above. J.A. 78. Glover timely appealed.

## II.

Glover asks us to vacate and remand for resentencing. First, he submits that the district court erred in imposing certain financial conditions of supervised release in its

7

written judgment that it did not orally pronounce at sentencing.  Second, he challenges the application of the four-level enhancement to his offense level for possessing a firearm during another felony.  Third, he asserts that the district court erred in denying a two-level reduction in his base offense level for acceptance of responsibility because he twice tested positive for methamphetamine while on pretrial release.  Third, he contends that the district court erroneously treated the advisory Sentencing Guidelines as mandatory, in violation of *United States v. Booker*, 543 U.S. 220 (2005).  We address each issue in turn.

A.

We begin with the issue of whether the district court erred by imposing certain financial conditions of supervision.  On this issue, the parties agree that remand is warranted because the district court failed to adequately explain these conditions.

At sentencing, the court ordered Glover to comply with three special conditions: (1) to participate in a narcotic addiction program; (2) to submit to warrantless searches upon reasonable suspicion; and (3) to support his dependents.  The court did not specifically order Glover to comply with any special financial conditions.  Instead, it ordered Glover to "comply with the mandatory and standard conditions of supervised release . . . referenced in [S]tanding [O]rder 20-SO-8."  J.A. 70.  That standing order included as "standard conditions of supervision" the challenged financial conditions, which prohibited defendants from incurring new credit charges or opening additional lines of credit without their POs' approval and required defendants to provide their probation officers with access to any requested financial information.  *See In re Mandatory and Standard Conditions of*

8

*Probation and Supervised Release* at 4 (20-SO-8) (E.D.N.C. June 25, 2020). However, by the time of Glover's sentencing, a new standing order—which did not include the challenged conditions—had superseded that standing order. *See In re Mandatory and Standard Conditions of Probation and Supervised Release* (20-SO-5) (E.D.N.C. May 6, 2021).

Sentencing courts may impose discretionary conditions of supervised release as long as these conditions are "reasonably related" to the § 3553(a) factors, "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in" § 3553(a), and "[are] consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d); *see also* U.S.S.G. § 5D1.3(b). There are two categories of discretionary conditions—standard conditions and special conditions. U.S.S.G. § 5D1.3(c)–(d). The Guidelines provide that standard conditions are "recommended" for all defendants, while special conditions are "recommended" only in certain circumstances, depending on the court's individualized assessment of a defendant. *United States v. Rogers*, 961 F.3d 291, 295 (4th Cir. 2020) (quoting U.S.S.G. § 5D1.3).

Because a defendant has a right to be present when he is sentenced, the Fourth Circuit requires district courts to orally pronounce all discretionary "conditions of supervised release . . . at a defendant's sentencing hearing." *Id.* at 296. Including discretionary conditions for the first time in a subsequent written judgment nullifies those conditions and necessitates remand. *Id.* at 295, 300–01. To comply with this rule, we have held that it is best practice for district courts to "announce each discretionary condition in open court with the defendant present." *Id.* at 299 (simplified). But alternatively, a district

9

court may incorporate "a written list of proposed conditions, such as the recommendations of the probation office set out in a defendant's pre-sentence report, . . . or . . . a court-wide standing order that lists certain conditions of supervised release." *Id.* Importantly, district courts must explain these conditions in a way that "allow[s] for meaningful appellate review and . . . promote[s] the perception of fair sentencing." *United States v. McMiller*, 954 F.3d 670, 675–76 (4th Cir. 2020) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). "[T]his duty cannot be satisfied or circumvented through the adoption of a standing order purporting to impose special conditions of supervised release across broad categories of cases or defendants." *Id.* at 676. When a district court fails to explain the conditions of supervised release adequately, it renders the sentence procedurally unreasonable and abuses its discretion. *United States v. Lewis*, 958 F.3d 240, 243 (4th Cir. 2020) (simplified).

As the government concedes, the district court erred by failing to explain the imposition of the challenged conditions.[2] Moreover, neither the PSR nor the sentencing record indicate factual circumstances—such as a failure to pay child support or inconsistent work history—that would support the imposition of such conditions. We therefore vacate the special financial conditions and remand for further proceedings.[3]

---

[2] It is not entirely clear whether abuse-of-discretion review or plain-error reviews applies to Glover's challenge to the financial conditions, as he failed to object to the district court's imposition of these conditions and to the incorporation of Standing Order 20-SO-8. Nonetheless, the government concedes that the district court reversibly erred under any standard. We agree and therefore need not decide which standard applies. *See McMiller*, 954 F.3d at 675 n.4.

[3] Because we remand this case for resentencing as to the special financial conditions, we

10

B.

We next turn to Glover's objection to the application a four-level enhancement for possessing a firearm in connection with another felony under Guidelines § 2K2.1. As relevant here, Guidelines § 2K2.1(b)(6)(B) provides for a four-level enhancement for possession of a firearm "in connection with another felony offense." The enhancement applies "in a case in which a defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary[.]" U.S.S.G. § 2K2.1(b)(6)(B) cmt. n.14(B).

North Carolina felonious breaking or entering qualifies as burglary under application note 14(B) to Guidelines § 2K2.1. *United States v. Pridgen*, 623 F. App'x 62, 64 (4th Cir. 2015) (per curiam). Under North Carolina law, "[a]ny person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon." N.C. Gen. Stat. § 14-54(a). The North Carolina Supreme Court "has held that N.C. Gen. Stat. § 14-54(a) was intended merely to codify preexisting North Carolina law that criminalized breaking or entering without the consent of the owner." *United States v. Mungro*, 754 F.3d 267, 270 (4th Cir. 2014) (citing *North Carolina v. Boone*, 256 S.E.2d 683, 687 (N.C. 1979)). "Entry with consent of the owner of a building, or anyone empowered to give effective consent to entry, cannot be the basis of a conviction

do not reach Glover's argument that because Standing Order 20-SO-8 was no longer operative at the time of his sentencing, the special financial conditions that it contained were nullities.

11

under G.S. 14-54(a)." *Id.* (simplified).

In determining whether a district court properly applied a sentencing enhancement under the Guidelines, this Court reviews the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Adepoju*, 756 F.3d 250, 256 (4th Cir. 2014). We review a district court's determinations regarding the reliability of information in a PSR with "considerable deference." *United States v. McDowell*, 745 F.3d 115, 120 (4th Cir. 2014). Accordingly, we will not disturb a court's determination regarding the reliability of the factual allegations in the PSR unless we are "left with the definite and firm conviction that a mistake has been committed." *Id.* (simplified).

### 1.

Glover does not dispute that North Carolina felonious breaking or entering supports the four-level enhancement under § 2K2.1. He also does not dispute that he accessed Mabry's home—and specifically, Mabry's bedroom—through a door from the garage, which constitutes an entering under North Carolina law. *North Carolina v. Myrick*, 291 S.E.2d 577, 579 (N.C. 1982) ("The state need not show both a breaking and an entering." (citations omitted)). Rather, he argues that the government did not establish that he lacked consent to enter Mabry's home, and therefore, it did not show that he possessed the gun during a felonious breaking or entering. The government responds that the district court properly inferred that Glover lacked consent to enter the home and that the court did not err by enhancing his sentence accordingly.

When a party objects to a portion of a presentence report, Federal Rule of Criminal

12

Procedure 32(i)(3)(B) requires the sentencing court to "rule on the dispute or determine that a ruling is unnecessary." The objecting party "has an affirmative duty to make a showing that the information in the [PSR] is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990) (citation omitted). Without such an affirmative showing, "the court is free to adopt the findings of the [PSR] without more specific inquiry or explanation." *Id.* (simplified). Below, Glover indeed made more than a "mere objection" to the enhancement before the district court—he testified during the sentencing hearing that Mullen allowed him into Mabry's home. *Terry*, 916 F.2d at 162. But the government presented its own evidence in response to that objection. According to Mabry's testimony, Mabry never saw Glover on March 13, Glover entered Mabry's home when Mabry was absent and Mullen was asleep, and when Mabry discussed the incident with Mullen, she told him that she did not know who took the gun.[4]

Given this competing testimony, we decline to disturb the district court's application of the four-level enhancement. Clear error occurs only when we are left with a "definite

---

[4] The government's presentation of evidence distinguishes this case from *United States v. Martinez*, 584 F.3d 1022 (11th Cir. 2009), and *United States v. Poor Bear*, 359 F.3d 1038 (8th Cir. 2004). Glover relies on these cases to argue that, once a defendant has objected to factual allegations in a PSR, the government must present evidence to prove those allegations. In both *Martinez* and *Poor Bear*, a defendant objected to factual allegations in a PSR that supported an increased base offense level or sentencing enhancement, but the government did not present evidence to support those disputed facts. *Martinez*, 584 F.3d at 1029; *Poor Bear*, 359 F.3d at 1041. As a result, the Eighth and Eleventh Circuits reversed the application of the relevant enhancements. *Martinez*, 584 F.3d at 1030; *Poor Bear*, 359 F.3d at 1043. Here, by contrast, the government did not rely exclusively on the PSR at sentencing and presented testimony from Mabry to counter Glover's objection.

13

and firm conviction," *McDowell*, 745 F.3d at 120 (quotation omitted), that "the lower court's factual findings are against the clear weight of the evidence considered as a whole," *United States v. Medley*, 34 F.4th 326, 337 (4th Cir. 2022) (simplified). And importantly, we "afford 'great deference' to a district judge's credibility determinations and how the court may choose to weigh the evidence." *United States v. Williamson*, 953 F.3d 264, 273 (4th Cir. 2020) (quoting *United States v. Henry*, 673 F.3d 285, 292 (4th Cir. 2012); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two . . . witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."). Here, the district court was entitled to credit Mabry's testimony over Glover's, particularly when Glover was charged with breaking or entering in state court.[5] From that testimony, it could infer that Glover entered the home while Mabry was gone and Mullen was asleep. That we might have might have weighed the evidence differently is not grounds for reversal. *See Medley*, 34 F.4th at 337 (simplified). In light of this high standard, we cannot say that the district court erred when it found, by a preponderance of the evidence, that Glover entered the home without consent and therefore possessed the firearm during a felonious breaking or entering under North Carolina law.[6]

---

[5] Glover argues that his "bare arrest record" cannot support an assumption that he committed felonious breaking or entering. Reply Br. at 6 (quoting *United States v. Berry*, 553 F.3d 273, 284 (3d Cir. 2009)). Given that there is sufficient testimonial evidence to support the enhancement, we need not reach this argument.

[6] For the same reasons, we disagree with Glover that *United States v. Denmark*, 380 F.

2.

In the alternative, Glover contends that the district court erred by failing to make explicit findings in support of the enhancement. The government responds that the court could simply adopt the PSR's findings and did not need to make express findings. Federal Rule of Criminal Procedure 32(i)(3)(B) provides that a sentencing court[m]ust—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing.

This rule aims "to ensure that a record is made as to how the district court ruled on any alleged inaccuracy in the PSR . . . and thereby to allow effective appellate review of the sentence imposed." *United States v. Walker*, 29 F.3d 908, 911 (4th Cir. 1994) (simplified). To comply with this Rule, however, a district court "need not articulate findings as to disputed factual allegations with minute specificity." *United States v. Bolden*, 325 F.3d 471, 497 (4th Cir. 2003) (simplified). Nor must a district court make

---

App'x 952 (11th Cir. 2010) (per curiam), is analogous to this case. There, the Eleventh Circuit held that a district court erred in applying the § 2K2.1(b)(6) enhancement when a defendant stole a rifle from a storage shed on a property where he frequently worked. 380 F. App'x at 953. The court highlighted that the property owner "frequently invited [the defendant] onto the property" to "perform[] yard work and odd jobs," and that the defendant was permitted to access the shed to retrieve tools. *Id.* at 955. Because the defendant had permission to enter the property and the shed, the court concluded that he did not commit burglary and therefore did not possess the firearm in conjunction with another felony. *Id.* Here, by contrast, Glover and Mabry were merely next-door neighbors. Glover occasionally visited Mabry's house, but the evidence did not suggest that Glover had unrestricted access to the home, particularly given Mabry's testimony.

15

individual findings for each controverted matter. *See United States v. Burnley*, 988 F.3d 184, 190 (4th Cir. 2021) (citation omitted). Instead, a district court may "adopt the PSR's findings *in toto* as the factual basis for a sentencing decision so long as it clearly resolved any factual disputes." *Id.* (simplified). Importantly, however, "an enhancement that rests only on a general citation to the PSR may still fail clear error review if the record as a whole runs contrary to that conclusion." *Id.* (simplified). Here, as detailed above, the district court overruled Glover's objection to the enhancement and adopted the PSR's findings after hearing witness testimony and the parties' arguments, giving us a sufficient record to "discern the factual bases" of the court's decision. *Walker*, 29 F.3d at 911.[7] For these reasons, we affirm the district court's application of the four-level enhancement.

## C.

We turn now to Glover's contention that the district court erred in denying a two-level reduction for acceptance of responsibility. Glover tested positive twice for

---

[7] Glover also argues for the first time on appeal that the district court erred by failing to make a specific factual finding that he had the intent to commit a felony or larceny at the moment of breaking or entry, as North Carolina law requires. *See, e.g.*, *North Carolina v. Ly*, 658 S.E.2d 300, 306 (N.C. Ct. App. 2008) (citation omitted). Without such intent, the offense becomes misdemeanor breaking and entering, which would preclude the § 2K2.1(b)(6)(B) enhancement from applying. *See North Carolina v. Peacock*, 330 S.E.2d 190, 192–95 (N.C. 1985). Because Glover failed to raise this argument below, plain error review applies. Under plain error review, "relief is not warranted unless there has been (1) error, (2) that is plain, and (3) affects substantial rights." *Jones v. United States*, 527 U.S. 373, 389 (1999). The court did not commit error—plain or otherwise—by not making a finding on this point. Again, after hearing evidence and arguments from both parties, it adopted the factual findings in the PSR, which supported the finding that Glover entered the residence with the intention of taking the firearm to pawn it.

16

methamphetamine while on pretrial release in September 2020. After the first test, he admitted to methamphetamine use. No evidence suggests that Glover admitted to using the drug before the second test. Based on these facts, the court denied the acceptance-of-responsibility reduction, explaining that "[o]ne of the conditions during [Glover's] release pending sentencing was that he violate no federal law. He's done that. And I just don't see how I can approve acceptance of responsibility in that situation." J.A. 58.

Glover mounts two challenges to this decision. First, he argues that the district court operated under a misapprehension that it lacked authority to grant the reduction because he admitted to using methamphetamine and twice tested positive for the drug while on pretrial supervision. Second, he asserts that the court erred in finding that he violated federal law by testing positive for methamphetamine, as federal law does not criminalize the use or consumption of a controlled substance. The government responds that the district court understood that it had the discretion to grant or deny the reduction regardless of Glover's drug use on supervision, and it did not err in exercising that discretion to deny the reduction.

Under Guidelines § 3E1.1(a), a two-level reduction in a defendant's offense level applies if "the defendant clearly demonstrates acceptance of responsibility for his offense." The defendant bears the burden of demonstrating, by a preponderance of the evidence, "that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct." *United States v. Dugger*, 485 F.3d 236, 239 (4th Cir. 2007) (quotation omitted). The commentary to this section provides several factors to consider when evaluating whether a defendant has clearly demonstrated acceptance of responsibility. As relevant here, these factors include "truthfully admitting the conduct comprising the

17

offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)," as well as "voluntary termination or withdrawal from criminal conduct or associations." U.S.S.G. § 3E1.1 cmt. n.1(A)–(B). Importantly, "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," and "the determination of the sentencing judge is entitled to great deference on review." *Id.* cmt. n.5.

As an initial matter, we must determine which standard of review applies. Clear-error review applies to a district court's denial of a reduction in offense level for acceptance of responsibility. *United States v. Kise*, 369 F.3d 766, 771 (4th Cir. 2004) (citations omitted). But a court's determination that it "had no legal authority to grant" a reduction for acceptance of responsibility is a legal issue that we review de novo. *United States v. Hargrove*, 478 F.3d 195, 198 (4th Cir. 2007) (citation omitted).

We hold that clear error review applies here, and that no clear error occurred. The record reflects that the court denied the reduction based on the Guidelines commentary, and that it properly viewed its decision as discretionary. *See United States v. Robinson*, 747 F. App'x 163, 164 (4th Cir. 2019) (per curiam) (rejecting argument that court denied an acceptance-of-responsibility reduction "as a matter of law [when] the record show[ed] that the district court denied . . . the adjustment based on the factors identified in the Guidelines commentary"). For example, in response to defense counsel's arguments in support of the reduction, the court remarked that "the sentencing judge is in a better position to make the decision" of whether to apply the reduction—demonstrating that it understood

18

that it had a discretionary decision to make.  J.A. 57.  The court went on to note that "[t]he only thing I've heard [from Glover's counsel] is an argument against *the exercise of the discretion*.  I haven't heard any argument by defense counsel as to why he used methamphetamine."  J.A. 57–58 (emphasis added).  It then explained how it weighed the fact of Glover's methamphetamine addiction against the seriousness of his repeated violations of the terms of his release, concluding that addiction did not excuse his behavior.  In framing its analysis and conclusion in this way, the court illustrated that it understood its legal authority to grant the reduction but chose not to exercise that authority.

Furthermore, the district court did not err in denying the reduction based on Glover's drug use and admission of drug possession.[8]  Glover emphasizes that he pled guilty and provided a written submission accepting responsibility for the conduct underlying his conviction, but these actions do not entitle him to the reduction.  *See Dugger*, 485 F.3d at 239 (citation omitted).  We routinely affirm district courts' denials of reductions when defendants test positive for drugs on pretrial release, even when they otherwise comply with the conditions of their releases.  *See, e.g.*, *United States v. Smith*, 747 F. App'x 136, 138 (4th Cir. 2018) (per curiam) (affirming denial of reduction due to continued drug use on pretrial release); *United States v. Childers*, 206 F. App'x 270, 271 (4th Cir. 2006) (per curiam) (same).  Glover's two positive drug tests—in addition to his admission that he

---

[8] The government asserts that this merits plain-error review because Glover did not raise it below—instead, he only contended that his drug use was irrelevant because of his guilty plea and acceptance of responsibility.  We need not determine which standard applies, because even assuming that the more lenient clear-error standard applies, we discern no reversible error.

19

illegally possessed methamphetamine before his first test—were more than sufficient grounds for the court to deny the reduction. *See United States v. Harbin*, 179 F. App'x 193, 193 (4th Cir. 2006) (per curiam) ("Our previous decisions do not hold that only multiple instances of drug use warrant denial of the adjustment, merely that there be some use of drugs after conviction.").

Of course, as Glover points out, he did not admit to unlawfully using or possessing methamphetamine before the second positive test, and federal law does not criminalize the use or consumption of a controlled substance. But the court did not err in relying on that positive test to deny the reduction. Use of a substance requires knowing and voluntary ingestion. *United States v. Clark*, 30 F.3d 23, 25 (4th Cir. 1994). Rather, if one uses a substance, "at least in almost any imaginable circumstance, it necessarily follows that [they have] possessed the substance." *Id.* Thus, relying on the second positive test—especially after Glover's prior positive test and admission of drug use—was not error. For these reasons, we affirm the district court's denial of the reduction for acceptance of responsibility.

## D.

Finally, we consider Glover's argument that the district court erred by treating the Sentencing Guidelines as mandatory. He highlights the court's comment at the conclusion of the sentencing hearing that "[it] was constrained by the sentencing Guidelines as to what sentence [it] gave [Glover], even though [Glover's] lawyer may disagree with that." J.A. 72. The government responds that this statement amounted to no more than an off-hand

20

observation, and that the sentencing transcript as a whole reflects the court's view of the Guidelines as advisory.

In *United States v. Booker,* the Supreme Court held that sentence enhancements under the then-mandatory Sentencing Guidelines violated the Sixth Amendment right to trial by jury. 543 U.S. 220, 244 (2005). As a result, the Court rendered the Guidelines "effectively advisory." *Id.* at 245. Now, sentencing courts must begin the process of sentencing "by correctly calculating the applicable Guidelines range," *Gall*, 552 U.S. at 49, but the lynchpin of sentencing is "whether the sentence is 'sufficient[] but not greater than necessary' in light of the factors identified in § 3553(a)," *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010). Under this regime, we review sentences for abuse of discretion, "which translates to review for 'reasonableness.'" *Id.* at 216 (quoting *Booker*, 543 U.S. at 261–62). "Procedural reasonableness evaluates the method used to determine a defendant's sentence." *Id.* Post-*Booker*, "treating the Guidelines as mandatory is procedurally unreasonable." *Id.* at 216. Procedural sentencing errors are subject to harmless-error review. *United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010).

Notably, we have declined to take a "flyspecking" or "gotcha!" approach when reviewing sentencing transcripts for *Booker* errors. *Mendoza-Mendoza*, 597 F.3d at 218. We instead advise district courts "to avoid words like 'presumption' and 'obligation.' But what matters on appeal is what a court actually did, not whether a remark here or there, removed from the larger context in which it was made, is on some list of forbidden phrases." *Id.* As long as the sentencing court heard arguments from both sides and made

21

an individualized assessment under the § 3553(a) factors, then stray remarks that appear to contradict *Booker* do not render a sentence unreasonable. *Id.*

No *Booker* error occurred here despite the district court's comment about being "constrained" by the Guidelines. The sentencing transcript makes clear that the court understood the Guidelines to be advisory, and meaningfully engaged with defense counsel's argument for a 36-month variance sentence. J.A. 67–69. For one, the court explained that Glover's drug use, family history of addiction, and remorse did not outweigh the seriousness of the instant offense and criminal record. J.A. 67–68. Further, before imposing Glover's sentence, the district court referenced *Booker* and described the Guidelines as "[a]dvisory." J.A. 69, 69 (sentencing Glover "in accordance with the Supreme Court['s] decision in [*Booker*]"). It also noted that it "considered [the Guidelines] range as well as other relevant factors set forth in the sentencing Guidelines and those set forth in the statutes." J.A. 69; *see also* J.A. 70 (imposing a three-year term of supervised release and stating that "[t]he Court has carefully considered the provisions of 18 U.S.C.[ §] 3583(d) and the sentencing factors outlined in 18 U.S.C.[ §] 3553(a)"). Altogether, the district court's remarks at sentencing demonstrated its "awareness of the latitude it possessed to determine an appropriate sentence." *United States v. Dendy*, 438 F. App'x 210, 216 (4th Cir. 2011) (per curiam).

Glover cites several cases where we found reversible *Booker* error, but the court's stray remark here differs significantly from the contexts of those cases. In *Mendoza-Mendoza*, for example, the sentencing court made the "emphatic" statement "at the very outset" of sentencing that it was "obligated" to impose a Guidelines-range sentence, which

22

"fram[ed] the entirety of [its] explanation." 597 F.3d at 219. The court also imposed a Guidelines-range sentence despite explicitly disagreeing with the recommended range, suggesting that it felt compelled to sentence within the Guidelines despite its preference to deviate from them. *Id.* Similarly, in *United States v. Raby*, the court repeatedly made remarks belying its mistaken belief that our case law effectively required it to impose a Guidelines-range sentence, noting that it was "extremely difficult, if not impossible" to sentence the defendant outside of the Guidelines. 575 F.3d 376, 377–82 (4th Cir. 2009) (simplified); *see also United States v. Robinson*, 221 F. App'x 236, 244 (4th Cir. 2007) (per curiam) (vacating and remanding sentence imposed before *Booker* when the district court "made no indication of how it would have sentenced [the defendant] under an advisory guidelines range," and *Booker* issued during the pendency of the appeal); *United States v. Sullivan*, 455 F.3d 248, 265–66 (4th Cir. 2006) (per curiam) (King, J., concurring) (same); *United States v. Rodriguez*, 433 F.3d 411, 416 (4th Cir. 2006) (same). Here, by contrast, the court made the comment at issue at the end of the sentencing, after noting that the Guidelines are advisory and after carefully assessing the circumstances of Glover's offense and his background.[9] For these reasons, the district court's offhand remark does not evince an abuse of discretion.

---

[9] Because Glover did not preserve his objection to the district court's statement during the sentencing hearing, the government contends that this issue should receive plain-error review. *See Lynn*, 592 F.3d at 576 (holding that preserved objections to procedural sentencing errors receive harmless-error review and unpreserved objections receive plain-error review). We perceive no error here under any standard of review and need not decide which standard applies.

23

III.

For the foregoing reasons, we AFFIRM IN PART, VACATE IN PART, and REMAND for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*